IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| GEORGE R.P. LAIRD | Civ. No. 1:15-cv-02105-CL |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

CLARKE, Magistrate Judge.

Plaintiff George Laird seeks judicial review of the Social Security Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g), and reviews to determine that the Commissioner's decision was based upon substantial evidence. *Id.*; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). All parties have consented to a Magistrate Judge's entry of final judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Commissioner's decision is REVERSED and REMANDED for the immediate calculation and award of benefits.

Page 1 – **OPINION & ORDER**

## BACKGROUND

Born in 1947, Mr. Laird alleges disability since April 2010 due to rectal cancer and post-traumatic stress disorder. Admin. R. 50, 142, 159. Mr. Laird worked as a truck driver. *Id.* at 182. The Commissioner denied his application, Mr. Laird appealed, the Commissioner's Administrative Law Judge ("ALJ") held a hearing, and the ALJ again found Mr. Laird not disabled on April 16, 2014. Admin. R. 12-21, 44-67. The Commissioner's Appeals Council accepted additional evidence into the record, but declined to disturb the ALJ's decision. *Id.* at 1-5.

The ALJ found Mr. Laird's rectal adenocarcinoma, post-traumatic stress disorder, paroxysmal atrial fibrillation, gastrointestinal esophageal reflux disorder, and history of chronic alcohol abuse "severe" pursuant to 20 C.F.R. § 404.1524(c). Admin. R. 14. She concurrently inferred that his allegations of dizziness, incontinence, and hand and foot numbness were unrelated to a medically-determinable impairment. *Id.* The ALJ found that Mr. Laird's identified impairments did not meet or medically equal a disorder listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 15-16. Consequently, she determined he retained the RFC to perform a range of medium work as defined in the Commissioner's regulations, with additional limitations:

> [H]e is further limited to tasks that involve no more than 6 hours of standing/walking in an eight-hour day (with normal breaks). His ability to remain seated is not limited. He can tolerate no more than occasional interaction with public.

Admin. R. 16. The ALJ found that this RFC allowed Mr. Laird to perform his past work as truck driver pursuant to 20 C.F.R. § 404.1520(a)(4)(i-iv). She alternatively found him able to perform

work in the national economy as a telephone directory distribution driver and escort driver[1] pursuant to 20 C.F.R. § 404.1520(a)(4)(v). *Id.* at 19. The ALJ concluded Mr. Laird was not disabled.

## ANALYSIS

Mr. Laird asserts the ALJ erroneously evaluated (1) his testimony and (2) that of his wife, (3) incorrectly assessed his Veteran's Administration disability determination, and, consequently, (4) omitted relevant limitations from her conclusion that Mr. Laird could perform his past work or other work in the national economy. Mr. Laird was last insured for Title II Disability Insurance Benefits on December 31, 2012. Admin R. 155. He must therefore show that his disability began before that date pursuant to 20 C.F.R. §§ 404.130-131.

### I. Claimant Testimony

#### A. Testimony

Mr. Laird testified at his hearing, and submitted reports and questionnaires to the record. Mr. Laird testified he could not return to commercial truck driving due to incontinence following rectal cancer surgeries. Admin. R. 52. He reluctantly described this in some detail in response to the ALJ's questioning. *Id.* Mr. Laird later added that balance issues related to his foot numbness would interfere with commercial driving. *Id.* at 59. In conclusion, he stated "I'm not licensed to drive a truck right now," because "I do not have my health card." *Id.* at 60. The ALJ questioned this, and Mr. Laird replied that he last attempted to get his "health cleared" for this purpose in approximately 2010. *Id.*

---

[1] "Escort driver" refers to driving a pilot car accompanying a wide load vehicle. Admin. R. 65. It does not refer to a limousine chauffer. *Id.* at 64.

Mr. Laird returned numerous questionnaires to the Commissioner in conjunction with his application materials. He stated that he performs home projects, gardens, and works with his two horses. *Id.* at 175. He cannot sleep more than two to three hours per night due to anxiety, and prepares simple meals. *Id.* at 175-76. Mr. Laird goes outside, but stays on his property and does not go to public places. *Id.* at 176. His interests include reading, leatherwork ("braiding," "lacing") and horses. *Id.* at 178. He can shop (*id.* at 177), but needs his wife with him if he goes places. *Id.* at 178. Mr. Laird gets along well with his family, but stated he is "very antisocial with others." *Id.* at 179. In response to a question asking if he has any unusual behaviors or fears, Mr. Laird wrote, "I can't stand for someone I don't know to stand behind me." *Id.* at 180.

Mr. Laird completed an additional questionnaire stating that his PTSD limitations stem from his Vietnam combat service. *Id.* at 195.

### B. Legal Standards

The ALJ must consider a claimant's statements regarding his symptoms. 20 C.F.R. § 404.1529. This analysis is individualized, but pain and functional limitation must relate to a medically-determinable impairment. *Id.* at § 404.1529.

The Ninth Circuit consequently directs a two-step process in evaluating a claimant's testimony. First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028. 1036 (9th Cir. 2007). Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996), *reaff'd by Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Second, absent evidence of malingering, the ALJ may reject a claimant's testimony to the severity of his symptoms only by offering "specific, clear and

convincing reasons for doing so." *Id.*; *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Such findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991), *en banc*; *see also Brown-Hunter*, 806 F.3d at 493.

### C. Analysis

The ALJ stated that Mr. Laird's allegations of incontinence, hand and foot numbness, and dizziness were "not otherwise documented in the record," and apparently discredited them. Admin. R. 14. She generally discussed Mr. Laird's medical record and daily activities, *id.* at 15-18, concluding that his statements were "not entirely credible for the reasons explained in this decision." *Id.* at 17.

#### 1. Medical Record

##### a. Incontinence

The ALJ repeatedly stated the medical record did not support Mr. Laird's allegation of incontinence following surgery and treatment for rectal and colon cancer. *Id.* at 14, 17, 18. She also stated that the record is "silent on this matter." *Id.* at 17.

Mr. Laird had numerous procedures in 2010 and early 2011, including a colostomy. *Id.* at 241, 247, 249. Physicians noted the colostomy was "working well" in November 2010 (*id.* at 241), and removed it on April 25, 2011. *Id.* at 385. Mr. Laird's treating oncologists and general practitioners performing follow-up care repeatedly noted and treated his ongoing colon issues, including both diarrhea and impaction throughout the period under review.

The Commissioner now points to a March 28, 2011 colonoscopy report stated that Mr. Laird's colitis symptoms, including diarrhea "would improve with time and could be treated medically." Def.'s Br., p. 9 (citing *id.* at 325-26). The record does not support this. Treatment

Page 5 – **OPINION & ORDER**

notes throughout show that Mr. Laird experienced as many as seven urgent bowel movements per day. Admin. R. at 445. Mr. Laird changed doctors in 2013 due to a household move; in November 2013 a new treating oncologist stated that Mr. Laird experienced alternate "incontinence of stool or is constipated" due to anatomical changes from radiation and surgery. Admin. R. 536. This is consistent with his testimony addressing urgency and incontinence. The ALJ's finding on the matter is not based upon the record and is not supported by substantial evidence.

### b. Neuropathy

Mr. Laird also testified that neuropathy and numbness in his fingers prevents him from holding things, manipulating large items such as hay bales, and performing simple functions such as buttoning a shirt. Admin. R. 55-56. He stated that physicians attributed the numbness to chemotherapy treatments, and explained he could not fully recall or pronounce the name of the relevant chemotherapy drug. *Id.* at 55-56. He also testified that the numbness was permanent. *Id.* at 56-57.

Mr. Laird's neuropathy is well documented. The record shows that neuropathy in his hands steadily increased throughout his 2010 and 2011 chemotherapy treatments. *Id.* at 221, 225, 227, 229, 231, 235, 243   It did not resolve when treatment ended. *Id.* at 564. The record contradicts the ALJ's finding that the impairment was not medically determinable. The ALJ was obliged to provide clear and convincing reasons for rejecting testimony relating to a medically-determinable impairment or symptoms related to treatment of a medically determinable impairment. *Lingenfelter*, 504 F.3d at 1036; *Bunnell*, 947 F.2d at 346, *en banc*; *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (instructing notice of medication side effects). She did not.

///

### c. Dizziness

Mr. Laird testified that metoprolol[2] and other heart medications made him dizzy. *Id.* at 56-57. He also stated that his primary care physician ceased medication orders for all but metoprolol due to dizziness. *Id.*

The ALJ concluded that the medical record did not support a finding of dizziness as an impairment. *Id.* at 15. This is insufficient under the standard above, and the burden is especially relevant when such side effects directly relate to a claimant's ability to perform work activity. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (comparing medication side effects and work-related limitations). Mr. Laird testified that prescribed metoprolol made him dizzy. Admin. R. 56-57. The medical record supports this testimony, Admin. R. 493, and chronic dizziness is relevant to performance of Mr. Laird's past work as a commercial truck driver. The ALJ failed to properly consider dizziness as a medication side effect, and consequently erroneously discredited the testimony.

### 2. Activities of Daily Living and Social Functioning

An ALJ's evaluation of a claimant's pain and symptom testimony may cite a claimant's activities of daily living. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). This analysis may address whether the indicated activities contradict other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But, the reviewing court must exercise caution in identifying such findings. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

---

[2] Metoprolol is a beta-blocker medication used to treat high blood pressure, chest pain, and arrhythmia. National Institute of Health, U.S. National Library of Medicine, MedlinePlus, http://medlineplus.gov (last visited October 7, 2016).

Page 7 – **OPINION & ORDER**

The ALJ found that Mr. Laird had "mild" restriction in his daily activities, and cited his report that he could prepare meals, manage household chores, and shopped for home supplies and feed animals. Admin. R., 16. She also cited Mr. Laird's testimony that he could lift a seventy-pound hay bale, perform farm chores, and walk up to a mile. *Id.* at 18. The ALJ consequently concluded that he could perform "medium" work (*id.* at 16), which the regulations define as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

Mr. Laird testified he could roll a seventy-pound hay bale off the back of a pickup truck, and, in response to the ALJ's questioning, stated he could not "throw" it in a conventional manner. Admin. R. 55. The ALJ's inferential characterization of this activity as "medium" labor under the regulations is unsupported by the record. While this Court must defer to an ALJ's reasonable interpretation of the record, *Edlund*, 253 F.3d at 1156, mischaracterization of daily activities contradict instruction that an ALJ provide "clear and convincing" reasons for discrediting pain testimony. *Garrison*, 759 F.3d at 1015-16. Because the ALJ must be "especially cautious in concluding daily activities are inconsistent with testimony about pain," *id.* at 1516, this finding is not sustained.

The ALJ also found that Mr. Laird's medical record contradicted his statements regarding his limited social functioning. She cited clinical oncology notes reporting that Mr. Laird was "cheerful" and "very pleasant" in presenting for chemotherapy and related treatment. *Id.* at 14-15. These notes do not contradict Mr. Laird's testimony that he cannot relate to people he does not know, and experiences PTSD symptoms in public places. Further, Veteran's Administration treatment notes cite Mr. Laird's report that he required his wife's presence in public places. *Id.*

at 445. The ALJ's finding is not based upon the record, and is also not sustained under the standard above.

### 3. Commercial Diving License

Finally, the ALJ inaccurately cited Mr. Laird's hearing testimony regarding his commercial driving license. He stated "I am not licensed because I do not have my health card." Admin. R. 60. The ALJ asked Mr. Laird when he last "tried to get [his] health cleared" and Mr. Laird responded, "would have been – 2010 probably." *Id.* The ALJ wrote "the claimant testified at hearing that he had not attempted to renew his commercial driver's license since his cancer diagnosis." *Id.* at 19. This finding inaccurately reflects Mr. Laird's testimony.

For all of these reasons, the ALJ's assessment of Mr. Laird's symptom testimony is not sustained.

## II.     Lay Witness Testimony

### A. Testimony

Mr. Laird's wife, Denise Laird, submitted a third-party disability report questionnaire addressing Mr. Laird's PTSD symptoms. Admin. R. 166-73. She stated that Mr. Laird can cook, clean the house, and perform yard work for a "couple [of hours] a week." *Id.* at 168. He shops for home improvement materials twice a week, and can handle money without assistance. *Id.* Mr. Laird's hobbies include "horses, gardening, camping, fishing," which he participates in "occasionally and does them well." *Id.* at 170.

Ms. Laird stated that Mr. Laird exhibits anger and paranoia which "make it impossible for him to spend time around other people." *Id.* at 166. He performs regular daily activities, spending most of his time outside caring for horses. *Id.* at 167. Prior to his disability, he could be in public places and around people. *Id.* Mr. Laird experiences nightmares and sweating, and

Page 9 – **OPINION & ORDER**

sometimes requires reminders to shower and change his clothes. In response to questioning, Ms. Laird wrote that "loud noise, crowds, nightmares affect him day and night." *Id.* at 172.

### B. Standards

The ALJ must give reasons "germane" to the witness in rejecting lay testimony, and such testimony "*cannot* be disregarded without comment." *Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) (emphasis original). The ALJ may discard lay testimony that mirrors a claimant's testimony properly rejected. *Molina*, 674 F.3d at 1115.

### C. Analysis

The ALJ gave "partial" weight to Ms. Laird's observations, "to the extent they reasonably support a limitation to no more than occasional contact with the public. However, her statement does not support any further limits as it is not consistent with other credible evidence[.]"Admin. R. 18. The ALJ did not identify such evidence. Because the ALJ improperly rejected Mr. Laird's testimony, any reliance upon that determination in rejecting Ms. Laird's testimony is not sustained.

### III. Veteran's Administration Disability Determination

#### A. Veteran's Administration Record

Mr. Laird received his cancer treatment at a large regional medical center under the direction of specialized oncologists. These treatment notes constitute most of the administrative record now under review. The limited VA record, dated between 2010 and 2011, primarily reflects dental and routine general care, and contains a 2011 VA disability determination addressing combat-related PTSD. *Id.* at 422-90. Additional 2013 VA treatment notes address dental care. *Id.* at 502-09.

The August 26, 2011, VA PTSD evaluation form states it is for administrative use, disclaiming that "this questionnaire is for disability evaluation, not for treatment purposes." *Id.* at 426. The evaluation was based upon review Mr. Laird's claims folder and, notably, White City, Oregon VA Domiciliary medical records. *Id.* at 430. The record now under review does not include these medical records.

## B. Standards

The Social Security Administration must "ordinarily give great weight" to a Veteran's Administration disability determination. *McCartey v. Massinari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The Ninth Circuit reasons that the agencies share a "marked similarity" in their disability payment programs, *id.*, and directs that the Commissioner's ALJ may not dismiss a VA determination as irrelevant. *Valentine v. Comm'r*, 574 F.3d 685, 695 (9th Cir. 2009) (citing *id.*).

## C. Analysis

The ALJ gave "partial weight" to the Veteran's Administration one hundred percent disability award. *Id.* at 18. She reasoned that the award was based upon Mr. Laird's subjective complaints, which she found "only partially credible." *Id.* The ALJ cited *McCartey*, and stated:

///

///

///

///

///

///

///

///

Page 11 – **OPINION & ORDER**

> The VA determination did not consider more recent evidence showing that the claimant has been able to interact appropriately with family and treatment providers. Moreover, the claimant's subjective complaints have been shown to be only partially credible. The VA assessment appears to rely primarily on the claimant's self-assessment in the context of limited clinical observation. I note that his anxiety symptoms did not prevent him from working as a truck driver for over 15 years without any documented complaints. The VA rating decision does not account for the claimant's relatively active lifestyle, examples of which I have cited above. I have accounted for his expressed preference to avoid strangers by restricting him to tasks that involve no more than occasional contact with the public. The VA assessment is, therefore, given only partial weight.

Admin. R. 18 (internal citations omitted).

As discussed, the ALJ improperly rejected Mr. Laird's testimony, and citations to his activities therefore do not suffice to reject the VA evaluation.

The ALJ's reasoning that the VA assessment failed to account for Mr. Laird's interactions with family and medical providers is similarly flawed. *Id.* at 18. These interactions do not contradict Mr. Laird's testimony that his PTSD effects interaction with strangers and activity in public places. The ALJ's reasoning cannot be sustained.

Finally, the ALJ stated that the VA record contained no treatment notes supporting its PTSD assessment and disability award. The VA's disability determination states that it is based upon Mr. Laird's VA domiciliary medical records. Admin. R. at 430. These records were not included in the VA records now under review. The effect of this omission is discussed below.

## IV. Remand

### A. Remand Standards

The Court exercises discretion in determining remand parameters. *Treichler*, 775 F.3d at 1099-1100; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 513 U.S. 1038

(2000). 42 U.S.C. § 405(g), sentence four, instructs that the reviewing court may "affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." The "ordinary remand" rule instructs that the proper course is, generally, to remand to the agency for additional proceedings. *Treichler*, 775 F.3d at 1099; *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

A remand for award of benefits is appropriate where further administrative proceedings would serve no useful purpose and the record is fully developed. *Treichler*, 775 F.3d. at 1100; *Strauss v. Comm'r*, 635 F.3d 1135, 1138-139 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). Here, the Court must conduct a "credit-as-true" analysis. *Strauss*, 635 F.3d at 1138.

The "credit-as-true" doctrine directs that evidence be credited and an immediate award of benefits where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues requiring resolution before a disability determination can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled should the evidence be credited. *Treichler*, 775 F.3d at 1101-02. Application is discretionary. *Id.* at 1102; *see also Connett v. Barnhartt*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348, *en banc*). The Court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

### B. Remand Analysis

The ALJ's analysis of the testimonial, medical, and Veteran's Administration evidence is erroneous for the reasons established above. The ALJ's subsequent finding that Mr. Laird retained the ability to perform work as a truck driver, telephone book distribution driver, or

escort driver is consequently flawed and cannot be sustained under the first prong of the credit-as-true analysis.

In determining whether to award benefits or remand the matter for further proceedings, the Court must assess whether "outstanding issues remain in the record" under the second prong of the credit-as-true analysis. *Treichler*, 775 F.3d at 1101; *see also Strauss*, 635 F.3d at 1138.

The Commissioner's assertions on the matter are contradictory. While she requests remand for proceedings rather than award of benefits, she does not articulate any theory that the record requires further development. Def.'s Br. 17. But, she earlier asserts that "the fact that the VA disability rating dates only to December 1, 2011, when Plaintiff alleges he became disabled on April 23, 2010 is an outstanding issue in and of itself." Def.'s Br. 8 (citations omitted). The matter is inconsequential because the record contains ample evidence of Mr. Laird's incapacity between April 2010 and December 2011. Further, the Commissioner does not assert that the missing VA records domiciliary treatment records support her position.

Under the third prong of the credit-as-true analysis, the Court determines whether the record directs a finding of disability. *Treichler*, 775 F.3d at 1101. The vocational expert testified that one cannot sustain work as truck driver, phone book delivery driver, or escort driver if one required proximity to a restroom within twenty minutes of driving time. Admin. R. 65. The ALJ made no alternative findings that Mr. Laird could perform other work in the national economy at the fifth and final step of the regulatory analysis.

The indicated testimony is therefore credited as true, and a finding of disability is consequently entered. The matter is remanded for the immediate calculation and award of benefits pursuant to 42 U.S.C. § 405(g), sentence four.

///

Page 14 – **OPINION & ORDER**

DATED this \_\_\_19\_\_\_ day of October, 2016.

_____
MARK D. CLARKE
United States Magistrate Judge